**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| DELYAN SLAVCHEV PEEVSKI, *et al.*,  ) | |
| ) | |
| Plaintiffs,  ) | |
| ) | |
| v.  ) | Civil Action No. 22-2334 (TSC) |
| ) | |
| JANET YELLEN, Secretary,  ) | |
| Department of the Treasury, *et al.*,  ) | |
| ) | |
| Defendants.  ) | |
| _____ ) | |

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' PARTIAL MOTION TO DISMISS**</u>

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Director

STEPHEN M. ELLIOTT (PA Bar# 203986)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel:  (202) 353-0889
Fax:  (202) 616-8470
E-mail:  stephen.m.elliott@usdoj.gov

Counsel for Defendants

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

I.       Section 7031(c) of the Department of State, Foreign Operations, and Related
         Programs Appropriations Act, 2018 (Div. K, Pub. L. No 115-141) .................................. 2

II.      The Department of State's Designation of Plaintiff Pursuant to Section 7031(c) ............. 5

III.     Plaintiff's Lawsuit as it Pertains to the Department of State Defendants ......................... 5

STANDARD OF REVIEW .................................................................................................. 6

ARGUMENT ....................................................................................................................... 7

I.       Plaintiff's Challenge to His Section 7031(c) Designation is not Justiciable ..................... 7

         A.       Congress Has Expressly Foreclosed Judicial Review of Section 7031(c)
                  Designations ..................................................................................................... 9

         B.       Plaintiff Cannot Challenge the Secretary's 7031(c) Designation ........................ 10

II.      Plaintiff Cannot Use the APA as a Vehicle to Challenge His Section 7031(c)
         Designation ....................................................................................................... 12

         A.       The Nature and Consequences of Plaintiff's Section 7031(c) Designation
                  Preclude this Court's Review .............................................................................. 12

         B.       Section 7031(c) Designations Constitute Agency Decisions Committed to
                  the Department of State's Discretion ................................................................... 16

III.     A Member of this Court has Held that Plaintiff's Challenge to the Secretary's
         Section 7031(c) Designation is Not Justiciable ............................................................. 18

CONCLUSION .................................................................................................................... 20

i

## TABLE OF AUTHORITIES

**CASES**

*Abbott Lab'ys v. Gardner*,
  387 U.S. 136 (1967) .................................................................................................. 16

*Am. Nat'l Ins. Co. v. FDIC*,
  642 F.3d 1137 (D.C. Cir. 2011) ................................................................................. 6

*Arbaugh v. Y&H Corp.*,
  546 U.S. 500 (2006) .................................................................................................... 6

*Arpaio v. Obama*,
  797 F.3d 11 (D.C. Cir. 2015) ..................................................................................... 6

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................... 7

*\*Bautista-Rosario v. Mnuchin*,
  568 F. Supp. 3d 1 (D.D.C. 2021) ......................................................................... 18, 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................... 7

*Biden v. Texas*,
  142 S. Ct. 2528 (2022) .............................................................................................. 16

*\*Block v. Cmty. Nutrition Inst.*,
  467 U.S. 340 (1984) ............................................................................................ *passim*

*Brownell v. We Shung*,
  352 U.S. 180 (1956) ................................................................................................ 9, 15

*Conf. of State Bank Supervisors v. Off. of Comptroller of Currency*,
  313 F. Supp. 3d 285 (D.D.C. 2018) ........................................................................... 7

*Connecticut v. Dep't of Interior*,
  344 F. Supp. 3d 279 (D.D.C. 2018) ........................................................................... 2

*\*Fiallo v. Bell*,
  430 U.S. 787 (1977) .................................................................................................... 8

*\*Harisiades v. Shaughnessy*,
  342 U.S. 580 (1952) ......................................................................................... 8, 14, 18

*Heckler v. Chaney*,
  470 U.S. 821 (1985) .................................................................................................. 16

ii

*Kerry v. Din*,
   576 U.S 86 (2015) ................................................................................................ 8

*Kiobel v. Royal Dutch Petroleum Co.*,
   569 U.S. 108 (2013) ........................................................................................... 16

*Kleindienst v. Mandel*,
   408 U.S. 753 (1972) ............................................................................................. 9

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
   511 U.S. 375 (1994) ............................................................................................. 6

*Mathews v. Diaz*,
   426 U.S. 67 (1976) ............................................................................................... 8

*Matthew A. Goldstein, PLLC v. U.S. Dep't of State*,
   153 F. Supp. 3d 319 (D.D.C. 2016), *aff'd*, 851 F.3d 1 (D.C. Cir. 2017) ............................... 7, 8

*Mattwaoshshe v. United States*,
   557 F. Supp. 3d 28 (D.D.C. 2021) ..................................................................... 6

*\*Nkrumah v. Pompeo*,
   No. 20-CV-01892 (RJL), 2020 WL 6270754 (D.D.C. Oct. 26, 2020) ............................. 11, 17

*Rai v. Biden*,
   567 F. Supp. 3d 180 (D.D.C. 2021) ..................................................................... 10

*\*Saavedra Bruno v. Albright*,
   197 F.3d 1153 (D.C. Cir. 1999) ................................................................... *passim*

*Sackett v. EPA*,
   566 U.S. 120 (2012) ........................................................................................... 13

*Sierra Club v. Jackson*,
   648 F.3d 848 (D.C. Cir. 2011) ..................................................................... 8, 16

*Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*,
   549 U.S. 422 (2007) ............................................................................................. 6

*Sparrow v. United Air Lines, Inc.*,
   216 F.3d 1111 (D.C. Cir. 2000) ......................................................................... 7

*Steel Co. v. Citizens for a Better Env't*,
   523 U.S. 83 (1998) ............................................................................................... 7

*The Chinese Exclusion Case (Ping v. United States)*,
   130 U.S. 581 (1889) ........................................................................................... 14

*Thomas v. Principi*,
394 F.3d 970 (D.C. Cir. 2005) ................................................................ 6

*\*Trump v. Hawaii*,
138 S. Ct. 2392 (2018), *remanded*, 898 F.3d 1266 (9th Cir. 2018) ................................ 8, 11, 14

*\*United States ex rel. Knauff v. Shaughnessy*,
338 U.S. 537 (1950) .............................................................. 9, 18

*United States v. Mitchell*,
445 U.S. 535 (1980) ................................................................ 12

*United States v. Mitchell*,
463 U.S. 206 (1983) ................................................................ 12

*United States v. Sherwood*,
312 U.S. 584 (1941) ................................................................ 12

*W. Org. of Res. Councils v. Zinke*,
892 F.3d 1234 (D.C. Cir. 2018) ................................................. 7

*Yukon-Kuskokwim Health Corp. v. United States*,
444 F. Supp. 3d 215 (D.D.C. 2020) .......................................... 7

**STATUTES**

5 U.S.C. § 701 ................................................................... 12, 13, 16, 19

6 U.S.C. § 236 ................................................................... 9, 15, 18

8 U.S.C. § 1101(a) ............................................................. 11

8 U.S.C. § 1201 ................................................................. 9, 15, 18

8 U.S.C. § 1252 ................................................................. 9, 15

22 U.S.C. § 288 ................................................................. 11

Act of Sept. 26, 1961,
Pub. L. No. 87-301, 75 Stat. 650 ............................................ 9

Department of State, Foreign Operations, and Related Programs Appropriations Act, 2008,
Pub. L. No. 110-161, 121 Stat. 1844 (2007) ............................ 3

Department of State, Foreign Operations, and Related Programs Appropriations Act, 2012,
Pub. L. No. 112-74, 125 Stat. 786 (2011) .............................. 3

Department of State, Foreign Operations, and Related Programs Appropriations Act, 2014,
Pub. L. No. 113-76, 128 Stat. 5 ............................................. 3

Department of State, Foreign Operations, and Related Programs Appropriations Act, 2015,
    Pub. L. No. 113-235, 128 Stat. 2130 (2014) ........................................................................... 3

Department of State, Foreign Operations, and Related Programs Appropriations Act, 2017,
    Pub. L. No. 115-31, 131 Stat. 135 ......................................................................................... 4

Department of State, Foreign Operations, and Related Programs Appropriations Act, 2018,
    Pub. L. No 115-141, 132 Stat. 348 ......................................................................................... 2

**RULES**

Fed. R. Civ. P. 12 ................................................................................................................. 6, 7, 12

Local Rule 7 .............................................................................................................................. 2

## INTRODUCTION

For over a decade, Congress has authorized the Department of State to identify certain corrupt foreign government officials and their family members and deny them access to the United States.  That authority, set forth in Section 7031(c) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, implicates vital foreign policy and national security considerations that consistently and repeatedly have been left to the purview of the Executive by the Supreme Court.

Plaintiff Delyan Slavchev Peevski ("Plaintiff") purports to challenge his Section 7031(c) designation under the Administrative Procedure Act ("APA").  The Department of State designated Plaintiff because he acted "as an intermediary and accomplice to peddle influence and pay bribes to protect himself from public scrutiny and to exert influence over key institutions and sectors in Bulgarian society."  Compl. ¶ 39, ECF No. 1.  But long-standing Supreme Court precedent, grounded in separation-of-powers principles, confirms that the district courts should not second-guess the decisions of the Executive regarding who may and may not enter this country, especially given the lack of express congressional authorization to conduct such a review.  Further, the APA does not afford Plaintiff a right to challenge a final agency action when, as here, another statute precludes judicial review, and the decision is left to the agency's discretion.  Just last year, another member of this Court reached the same conclusions when considering an identical challenge to a Section 7031(c) designation under the APA.

For these reasons, as discussed more fully below, the Court should dismiss the case as it pertains to the United States Department of State, Secretary Antony J. Blinken, Assistant Secretary

Todd D. Robinson, and the United States Department of State Bureau of International Narcotics and Law Enforcement Affairs.[1]

## BACKGROUND

I.      **Section 7031(c) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2018 (Div. K, Pub. L. No 115-141)**

Section 7031(c) of the Department of State, Foreign Operations, and Related Programs Appropriations Act, 2018 (Pub. L. No. 115-141, Div. K., Tit. VII, § 7031(c), 132 Stat. 348, 884-85) ("Section 7031(c)") provides that officials of foreign governments and their immediate family members who the Secretary of State ("Secretary") has credible information have been involved in significant corruption or a gross violation of human rights are ineligible for entry into the United States.  *See* Section 7031(c)(1)(A).  It also requires that the Secretary publicly or privately identify the officials and immediate family members without regard to whether the individual has applied for a visa.  *See* Section 7031(c)(1)(B).  An individual designated under Section 7031(c)(1)(B) is generally ineligible for entry into the United States; in other words, the individual is ineligible for a visa and for admission to the United States.  The statute contains provisions for exceptions and waivers: (1) Section 7031(c)(2) provides that individuals shall not be ineligible if entry into the United States would further important United States law enforcement objectives or if the travel is necessary for the United States to comply with the U.N. Headquarters Agreement, and (2) Section

---

[1]  Defendants respectfully note that they do not intend to file a certified list of the contents of the administrative record simultaneously with this motion.  Local Rule 7(n)(1) presupposes that the "dispositive motion" at issue implicates the contents of the administrative record.  *See* Local Rule 7(n) cmt. 1 ("This rule is intended to assist the Court in cases involving a voluminous record . . . by providing the Court with copies of relevant portions of the record relied upon in any dispositive motion.").   None of Defendants' arguments in this motion require consultation of the administrative record.  In these circumstances, the members of this Court routinely waive the requirements in Local Rule 7(n)(1).  *See, e.g.*, *Connecticut v. Dep't of Interior*, 344 F. Supp. 3d 279, 294 (D.D.C. 2018) (collecting cases).

7031(c)(3) provides that the Secretary may waive ineligibility if the Secretary determines that the waiver would serve a compelling national interest or that the circumstances which caused the individual to be ineligible have changed sufficiently.

Congress first authorized Section 7031(c) in Section 699L of the Fiscal Year ("FY") 2008 annual appropriations act, requiring the Secretary to "compile and maintain a list of officials of foreign governments and their immediate family members who the Secretary determines there is credible evidence to believe have been involved in corruption relating to the extraction of natural resources in their countries."  Department of State, Foreign Operations, and Related Programs Appropriations Act, 2008, Pub. L. No. 110-161, Div. J, Tit. VI, § 699L, 121 Stat. 1844, 2373-74 (2007).  A version of this provision has been passed in every annual appropriations act for the Department of State since then, with substantive changes made in the following years:

·   **FY2012.**  Expanded to include "significant corruption" and changed "credible evidence" to "credible information."  Department of State, Foreign Operations, and Related Programs Appropriations Act, 2012, Pub. L. No. 112-74, Div. I, Tit. VII, § 7031(c), 125 Stat. 786, 1211 (2011).

·   **FY2014.**  Expanded further to include involvement in "a gross violation of human rights" and added a provision for public posting of the report.  Department of State, Foreign Operations, and Related Programs Appropriations Act, 2014, Pub. L. No. 113-76, Div. K, Tit. VII, § 7031(c), 128 Stat. 5, 511-12.

·   **FY2015.**  Added subsection 1(B), permitting private or public designation or identification without regard to visa status.  Department of State, Foreign Operations, and Related Programs Appropriations Act, 2015, Pub. L. No. 113-235, Div. J, Tit. VII, § 7031(c), 128 Stat. 2130, 2620 (2014).

- **FY2017.** Subsection 1(B) made mandatory ("may" became "shall"). Department of State, Foreign Operations, and Related Programs Appropriations Act, 2017, Pub. L. No. 115-31, Div. J, Tit. VII, § 7031(c), 131 Stat. 135, 640.

The Department of State implements Section 7031(c) as part of its multifaceted approach to combatting corruption. *See* U.S. Dep't of State, *Corruption-Related Designations – Bureau of International Narcotics and Law Enforcement Affairs*, https://www.state.gov/corruption-related-designations-bureau-of-international-narcotics-and-law-enforcement-affairs-2/ (last visited Oct. 27, 2022). Section 7031(c) reinforces U.S. efforts to fight corruption globally, which directly impacts the foreign policy, economic, and national security interests of the United States and those of partner nations. *See* U.S. Dep't of State, *Combating Corruption and Promoting Good Governance*, https://www.state.gov/combating-corruption-and-promoting-good-governance/ (last visited Oct. 27, 2022).

Globally, more than 300 officials and their family members have been publicly designated under Section 7031(c) for involvement in significant corruption or a gross violation of human rights. *See* U.S. Dep't of State, *Corruption-Related Designations – Bureau of International Narcotics and Law Enforcement Affairs*, https://www.state.gov/corruption-related-designations-bureau-of-international-narcotics-and-law-enforcement-affairs-2/ (last visited Oct. 27, 2022). The Department of State posted on its website the unclassified portions of the most recent reports to Congress regarding implementation of Section 7031(c). *See* U.S. Dep't of State, *Report to Congress on Anti-Kleptocracy and Human Rights Visa Restrictions – Bureau of International Narcotics and Law Enforcement Affairs*, https://www.state.gov/reports/report-to-congress-on-anti-kleptocracy-and-human-rights-visa-restrictions-public-listing/ (last visited Oct. 27, 2022).

II.     **The Department of State's Designation of Plaintiff Pursuant to Section 7031(c)**

On June 2, 2021, the Department of State announced the public designation of Plaintiff and some of his immediate family members, among others, pursuant to Section 7031(c).[2]   *See* U.S. Dep't of State, *Public Designation of Five Bulgarian Public Officials Due to Involvement in Significant Corruption* (June 2, 2021), https://www.state.gov/public-designation-of-five-bulgarian-public-officials-due-to-involvement-in-significant-corruption/ (last visited Oct. 28, 2022).   The agency designated Plaintiff and four other Bulgarian public officials for their involvement in significant corruption in Bulgaria; in particular, Plaintiff, a member of the Bulgarian parliament, used an official in the National Bureau for Control on Special Intelligence-Gathering Devices as "an intermediary and accomplice to peddle influence and pay bribes to protect himself from public scrutiny and to exert influence over key institutions and sectors in Bulgarian society." *Id.*   The Department of State explained that the designation rendered Plaintiff and some of his immediate family members ineligible for entry into the United States. *Id.*   Further, the Department of State noted that Plaintiff's designation reaffirmed the agency's "commitment to supporting rule of law and strengthening democratic institutions in Bulgaria." *Id.*

III.    **Plaintiff's Lawsuit as It Pertains to the Department of State Defendants**

Plaintiff advances a single claim against the Department of State defendants, challenging the Secretary's 7031(c) designation.[3]   *See* Compl. ¶¶ 51-56.   In one sentence, Plaintiff alleges that

---

[2]  Plaintiff's immediate family members are not parties to this lawsuit.   *See generally* Compl. ¶¶ 15-27.

[3]  The Complaint also challenges all of Plaintiffs' designations by the Department of the Treasury pursuant to Executive Order 13818, and that agency's purported failure to reach a timely decision with regard to their pending petition for reconsideration (de-listing).   *See* Compl. ¶¶ 51-65. Defendants have concurrently filed their Answer responding to the allegations that are relevant to the Department of the Treasury, Secretary Janet Yellen, the Office of Foreign Assets Control, and Director Andrea M. Gacki.

the Department of State's "imposition of sanctions on Plaintiffs . . . lacks facts and circumstances adequate to support that action and is therefore arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law."[4]  *Id.* ¶ 54.  Plaintiff asks the Court to "hold unlawful and set aside . . . State's imposition of sanctions on Plaintiff[]."  *Id.* ¶ 56.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move to dismiss a complaint, or any portion thereof, for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The party claiming subject-matter jurisdiction bears the burden of demonstrating that such jurisdiction exists. *See Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction.") (internal citation omitted).  When evaluating a Rule 12(b)(1) motion to dismiss, the district court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged[.]'" *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)); *accord Mattwaoshshe v. United States*, 557 F. Supp. 3d 28, 34 (D.D.C. 2021).  The Court must dismiss any claim over which it lacks subject matter jurisdiction.  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506-07 (2006); *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction

---

[4]  Although purportedly brought "against all defendants," Count I does not cite to Section 7031(c) and only obliquely references "State's imposition of sanctions."  Compl. ¶ 56.  Counsel for Plaintiff, however, represented that this claim seeks to challenge Plaintiff's Section 7031(c) designation under the APA.

over the category of claim in suit (subject-matter jurisdiction)[.]") (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 93-102 (1998)).

Federal Rule of Civil Procedure 12(b)(6) requires a complaint to be sufficient "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation omitted); *accord Yukon-Kuskokwim Health Corp. v. United States*, 444 F. Supp. 3d 215, 218 (D.D.C. 2020). The district court "must treat the complaint's factual allegations as true, and must grant [Plaintiff] the benefit of all inferences that can be derived from the facts alleged." *W. Org. of Res. Councils v. Zinke*, 892 F.3d 1234, 1240-41 (D.C. Cir. 2018) (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000)). However, Plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that the district court does not need to accept as true legal conclusions set forth in the Complaint).

## ARGUMENT

I.     **Plaintiff's Challenge to His Section 7031(c) Designation is not Justiciable**

A fundamental separation-of-powers principle renders the political branches' decisions to exclude noncitizens abroad judicially unreviewable.[5] This principle bars any review of Plaintiff's challenge to his Section 7031(c) designations, as discussed more fully below.

"For more than a century," the Supreme Court has consistently held that separation-of-powers principles firmly commit to Congress and the Executive "the admission and exclusion of

---

[5]   This Court has observed that "not every justiciability concern is one of subject matter jurisdiction." *Matthew A. Goldstein, PLLC v. U.S. Dep't of State*, 153 F. Supp. 3d 319, 331 n.9 (D.D.C. 2016), *aff'd*, 851 F.3d 1 (D.C. Cir. 2017); *Conf. of State Bank Supervisors v. Off. of*

foreign nationals." *Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018) (citing *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)), *remanded*, 898 F.3d 1266 (9th Cir. 2018).   The Supreme Court "ha[s] long recognized the power to . . . exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control."  *Fiallo*, 430 U.S. at 792; *see Mathews v. Diaz*, 426 U.S. 67, 81 (1976) ("For reasons long recognized as valid, the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government.").   "The conditions of entry for every alien, . . . the right to terminate hospitality to aliens, [and] the grounds on which such determination shall be based" are "wholly outside the power of this Court to control." *Fiallo*, 430 U.S. at 796 (internal citation omitted); *see also Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952) ("[A]ny policy toward aliens is vitally and intricately interwoven [in] . . . the conduct of foreign relations, the war power, and the maintenance of a republican form of government.  Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference."); *Kerry v. Din*, 576 U.S 86, 97 (2015) ("[T]his Court has consistently recognized that these [immigration decisions] are 'policy questions entrusted exclusively to the political branches of our Government, and we have no judicial

---

*Comptroller of Currency*, 313 F. Supp. 3d 285, 294 n.2 (D.D.C. 2018) (same).  The D.C. Circuit explained that "certain justiciability questions are governed by Rule 12(b)(6), rather than Rule 12(b)(1)[.]"  *Matthew A. Goldstein, PLLC*, 153 F. Supp. 3d at 331 n.9 (citing *Sierra Club v. Jackson*, 648 F.3d 848, 853 (D.C. Cir. 2011)).  But the D.C. Circuit also acknowledged that it "ha[s] not always been consistent in maintaining the distinction between a claim that is not justiciable . . . and a claim over which the court lacks subject matter jurisdiction."  *Id.* (quoting *Sierra Club*, 648 F.3d at 853).  Regardless of whether the Court considers Rule 12(b)(1) or Rule 12(b)(6) to be the appropriate Federal Rule of Civil Procedure to invoke, the Court should dismiss the instant lawsuit as it pertains to United States Department of State, Secretary Antony J. Blinken, Assistant Secretary Todd D. Robinson, and the United States Department of State Bureau of International Narcotics and Law Enforcement Affairs.

authority to substitute our political judgment for that of the Congress.'") (quoting *Fiallo*, 430 U.S. at 798). The "plenary congressional power to make policies and rules for exclusion of aliens has long been firmly established," and "Congress has delegated [the] conditional exercise of this power to the Executive." *Kleindienst v. Mandel*, 408 U.S. 753, 769-70 (1972). "[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 543 (1950). Absent such affirmative congressional authorization, judicial review of a noncitizen's exclusion is unavailable.

A.   **Congress Has Expressly Foreclosed Judicial Review of Section 7031(c) Designations**

Far from authorizing judicial review, Congress has precluded judicial review of decisions denying entry to noncitizens living abroad, including Section 7031(c) designations. Congress established a comprehensive statutory framework for judicial review of decisions concerning the ability of certain noncitizens physically present in the United States to enter or remain in this country. *See* 8 U.S.C. § 1252. But neither Section 1252 nor any other provision of the Immigration and Nationality Act provide for judicial review of visa determinations pertaining to noncitizens physically outside this country, and Congress has not authorized judicial review of visa denials. *See, e.g.*, 6 U.S.C. § 236(f); *see id.* § 236(b)(1), (c)(1). Similarly, Congress has banned judicial review of visa revocations (subject to a narrow exception inapplicable to noncitizens abroad). *See* 8 U.S.C. § 1201(i). And when the Supreme Court held that noncitizens physically present in the United States—but not noncitizens abroad—could seek review of their exclusion orders under the APA, *see Brownell v. We Shung*, 352 U.S. 180, 184-86 (1956), Congress responded by abrogating that ruling. *See* Act of Sept. 26, 1961, Pub. L. No. 87-301, § 5(a), 75 Stat. 650, 651-53; *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1157-62 (D.C. Cir. 1999) (recounting legislative history). The

House Report accompanying the abrogating statute explained that APA suits would "give recognition to a fallacious doctrine that an alien has a 'right' to enter this country which he may litigate in the courts of the United States against the U.S. Government as a defendant." H.R. Rep. No. 87-1086, at 33 (1961), *reprinted in* 1961 U.S.C.C.A.N. 2950, 2977.

Given these fundamental and longstanding principles of nonreviewability espoused by the Supreme Court, as well as Congress' disinclination to allow for judicial review, courts formulated the rule that the denial or revocation of a visa by a consular officer abroad "is not subject to judicial review . . . unless Congress says otherwise." *Saavedra Bruno*, 197 F.3d at 1159. This "doctrine of consular nonreviewability," *id.*, however, is just one manifestation of a broader principle of nonreviewability that merely reflects the context in which the principle most often arises—*i.e.*, challenges to decisions by consular officers adjudicating visa applications. But the principle underlying that doctrine applies regardless of the legal basis under which the Executive denies an alien entry into the United States.

### B.      Plaintiff Cannot Challenge the Secretary's 7031(c) Designation

This bar on judicial review of the political branches' exclusion of noncitizens abroad forecloses Plaintiff's challenge to his Section 7031(c) designation. When the Secretary possesses credible information of an individual's involvement in significant corruption, Congress has authorized the Secretary to "publicly or privately designate or identify" such an individual. *See* Section 7031(c). As a result, these individuals are ineligible for entry into the United States without regard to whether the individual has applied for a visa; and any arguments that such individuals should be admitted nonetheless should be left to the political branches, without judicial intervention. *See Rai v. Biden*, 567 F. Supp. 3d 180, 194 (D.D.C. 2021) (commenting that the Immigration and Nationality Act "exudes deference to the President in every clause") (quoting

10

*Hawaii*, 138 S. Ct. at 2418).  The principles that generally bar the courts from reviewing visa denials of individual consular officers should also bar review of decisions by the Secretary grounded in sensitive foreign affairs and national security considerations to revoke visas or deny entry of certain foreign corrupt government officials.  It would be likewise counterintuitive to think that Congress intended for federal courts to review Section 7031(c) designations considering Congress's silence on the matter and its consistent disinclination to authorize the review of decisions regarding an alien's ability to enter this country.  Thus, Plaintiff should not be permitted to use the instant lawsuit to circumvent principles set out in Supreme Court precedent.

In an analogous case, a member of this Court concluded that it lacked the authority to consider a decision by the Secretary that would lead to the visa revocation of an alien present in the United States.  *See Nkrumah v. Pompeo*, No. 20-CV-01892 (RJL), 2020 WL 6270754, *1 (D.D.C. Oct. 26, 2020).  In *Nkrumah*, a Ghanaian citizen challenged the Department of State's determination, pursuant to 22 U.S.C. § 288(d), that her presence in the United States was not desirable, which would ultimately result in the revocation of her G-4 visa.[6]  *Id.*  When assessing whether the plaintiff had demonstrated a likelihood of success on the merits for purposes of a request for a preliminary injunction, the Court determined that it could not assess the undesirability determination.  *Id.* at *2.  The Court explained that "the decision to admit or exclude a foreign national is a particularly sensitive area of Executive discretion," and therefore concluded that it was "not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien."  *Id.* (quoting *Saavedra Bruno*, 197 F.3d at 1159).  As in *Nkrumah*, the Court should not second-guess a decision

---

[6]  A G-4 visa is available to qualifying officers and employees of international organizations and their immediate family members.  *See* 8 U.S.C. § 1101(a)(15)(G).

made by the Secretary—here, Plaintiff's involvement in significant corruption as a foreign government official—that could ultimately lead to the revocation or denial of a visa.

Thus, the Court should decline to consider the propriety of Plaintiff's Section 7031(c) designation.

## II.     Plaintiff Cannot Use the APA as a Vehicle to Challenge His Section 7031(c) Designation

Plaintiff erroneously suggests that Congress has authorized judicial review of his Section 7031(c) designation under the APA.  *See* Compl. ¶¶ 51-56.  But "[i]t is elementary that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued[.]'"  *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)); *see also United States v. Mitchell*, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").  Two limitations embedded in the APA warrant  dismissal of Plaintiff's challenge to his Section 7031(c) designation pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

### A.     The Nature and Consequences of Plaintiff's Section 7031(c) Designation Preclude this Court's Review

The APA does not apply "to the extent that . . . statutes preclude judicial review."  5 U.S.C. § 701(a)(1).  This determination is made "not only from [a statute's] express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved."  *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 345 (1984).  The Supreme Court reaffirmed the principles embraced in *Block*, acknowledging that the APA's presumption of judicial review of agency action "may be overcome by inferences of intent drawn

from the statutory scheme as a whole." *Sackett v. EPA*, 566 U.S. 120, 128 (2012) (quoting *Block*, 467 U.S. at 349).

In contrast to the ordinary presumption that the APA provides for the district courts' consideration of final agency actions, the D.C. Circuit determined, in a comparable context, that it could infer that the immigration laws precluded judicial review. *See Saavedra Bruno*, 197 F.3d at 1162 (citing 5 U.S.C. § 701(a)(1)). In *Saavedra Bruno*, the D.C. Circuit held that it could not assess the propriety of the decision of a consular officer to deny a visa, even though Congress had not expressly stated that the district court's review was foreclosed. *Id.* Indeed, Congress had no need to expressly say as much "[g]iven the historical background against which it has legislated over the years[.]" *Id.* The D.C. Circuit observed that Congress could "safely assume" that noncitizens could not challenge consular officers' visa decisions in federal court "unless legislation specifically permitted such actions." *Id.* And the D.C. Circuit went on to note that "[w]hen it comes to matters touching on national security or foreign affairs—and visa determinations are such matters—the presumption of review runs aground." *Id.* (citation omitted).

The Court should reach the same conclusion in this case. Congress has no need to explicitly state and could "safely assume" that this Court cannot review the Secretary's decision to designate Plaintiff under Section 7031(c), a decision that has the same practical consequence that the D.C. Circuit faced in *Saavedra Bruno*—the exclusion from the United States of non-resident noncitizens living abroad. As the *Saavedra Bruno* decision makes clear, the Secretary's designation of Plaintiff implicates the Executive's national security and foreign policy prerogatives that overcome the presumption that the APA allows judicial review. Put another way, the presumption of judicial

review in this case, as in *Saavedra Bruno*, "is the opposite of what the APA normally supposes." 197 F.3d at 1162.

Further, the nature of Section 7031(c) designations—the exclusion from the United States of corrupt foreign government officials—would make APA review of the Secretary's decision particularly misguided. *See Block*, 467 U.S. at 345. As discussed above, the Supreme Court has long recognized "the power to exclude aliens 'as inherent in sovereignty, necessary for maintaining normal international relations and defending the country against foreign encroachments and dangers—a power to be exercised exclusively by the political branches of government[.]'" *Saavedra Bruno*, 197 F.3d at 1159 (quoting *The Chinese Exclusion Case (Ping v. United States)*, 130 U.S. 581, 609 (1889)); *see also Harisiades*, 342 U.S. at 588-89 ("[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, [and] the war power."). The Supreme Court has emphasized that "[b]ecause decisions in these matters may implicate 'relations with foreign powers,' or involve 'classifications defined in the light of changing political and economic circumstances,' such judgments 'are frequently of a character more appropriate to either the Legislature or the Executive.'" *Hawaii*, 138 S. Ct. at 2418-19 (citation omitted).

The Court should reject Plaintiffs' effort to use the APA to second-guess the Secretary's Section 7031(c) designation. Based on credible information, the Secretary determined that Plaintiff engages in significant corruption as a foreign government official. *See* U.S. Dep't of State, *Public Designation of Five Bulgarian Public Officials Due to Involvement in Significant Corruption* (June 2, 2021), https://www.state.gov/public-designation-of-five-bulgarian-public-officials-due-to-involvement-in-significant-corruption/ (last visited Oct. 28, 2022). Taking into account foreign policy and national security factors, the Secretary publicized the designations of

14

Plaintiff and some of his immediate family members under Section 7031(c), which renders them ineligible for entry into the United States.  *Id.* ("Today's actions reaffirm our commitment to supporting rule of law and strengthening democratic institutions in Bulgaria.").  The APA is not a basis to challenge determinations that federal courts have consistently found should be left to the Executive.

Nor is the APA a mechanism for Plaintiff to challenge his Section 7031(c) designations.  *See Block*, 467 U.S. at 345.  Congress has consistently declined to allow judicial review of decisions to exclude noncitizens living abroad, which would be the precise result in the event the Court permits Plaintiff's lawsuit to proceed.  While Congress allows judicial review of some immigration decisions for certain noncitizens physically present in the United States, *see* 8 U.S.C. § 1252, it has not authorized judicial review of such noncitizens' visa denials, *see, e.g.*, 6 U.S.C. § 236(f), or visa revocations, 8 U.S.C. § 1201(i).  And when the Supreme Court held that noncitizens physically present in this country could seek review of their exclusion orders under the APA, *see We Shung*, 352 U.S. at 184-86, Congress responded by abrogating the Court's decision.  *See Saavedra Bruno*, 197 F.3d at 1157-62 (recounting legislative history).  Finally, Congress is well-aware of the long-standing principle of nonreviewability in this context, and by enacting Section 7031(c) without explicitly authorizing judicial review, it should be presumed Congress intended to exclude such review.  This is especially true given that Congress has passed a version of this provision in every annual appropriations act for the Department of State since 2008, with substantive changes made in 2012, 2014, 2015, and 2017.  Congress, however, has never altered the statute to allow for judicial review of the Secretary's Section 7031(c) designations.

Section 7031(c) designations implicate fundamental issues at the intersection of national security, foreign policy, and immigration prerogatives that are precluded from judicial review under the APA. *See Saavedra Bruno*, 197 F.3d at 1160 (describing it as "unmistakable" that the immigration laws "preclude judicial review" of consular visa decisions); *see also Biden v. Texas*, 142 S. Ct. 2528, 2543 (2022) ("[T]he Court has taken care to avoid 'the danger of unwarranted judicial interference in the conduct of foreign policy," and declined to "run interference in [the] delicate field of international relations' without 'the affirmative intention of the Congress clearly expressed.'") (quoting *Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 115-16 (2013)).

**B.    Section 7031(c) Designations Constitute Agency Decisions Committed to the Department of State's Discretion**

Although the APA "embodies the basic presumption of judicial review," *Abbott Lab'ys v. Gardner*, 387 U.S. 136, 140 (1967), Plaintiff "must first clear the hurdle" of 5 U.S.C. § 701(a)(2). *Heckler v. Chaney*, 470 U.S. 821, 828 (1985). Section 701(a)(2) precludes from judicial review any action that "is committed to agency discretion by law." 5 U.S.C. § 701(a)(2). An agency action is committed to agency discretion by law and thus not subject to APA review if "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler*, 470 U.S. at 830. Agency action is unreviewable in such a situation because "the courts have no legal norms pursuant to which to evaluate the challenged action, and thus no concrete limitations to impose on the agency's exercise of discretion." *Sierra Club*, 648 F.3d at 855 (citation omitted). To determine whether a matter has been committed to agency discretion, the D.C. Circuit considers "the nature of the administrative action at issue," as well as "the language and structure of the statute that supplies the applicable legal standards for reviewing that action." *Id.* (citation omitted).

Here, both factors support the conclusion that the Secretary's Section 7031(c) designations are committed to the agency's unreviewable discretion.[7]   Section 7031(c)(1)(A) authorizes the Secretary to make a finding that "credible" information established an individual's involvement in "significant corruption," while Section 7031(c)(1)(B) affords the Secretary wide latitude to designate such an individual publicly or privately.   Unlike the Secretary, the district courts lack the foreign affairs expertise and regional knowledge needed to properly assess the credibility of information about an alien's possible involvement in corruption, or whether such corruption rises to the level that it may be deemed "significant."   Likewise, the district courts are not well-suited to question the Secretary's decision about whether to make a designation public or private, a determination that necessitates careful consideration of foreign policy, political, and diplomatic variables.   *Cf. Nkrumah*, 2020 WL 6270754, *3 (noting that the Secretary's "undesirability" determination "touches at the heart of foreign policy, diplomatic relations, the war power, and other key Executive interests").   Further, Section 7031(c) neither provides guidance about what constitutes "credible" information nor defines "significant corruption."   And similarly, Section 7031(c) does not set forth a standard for the Secretary to follow when assessing whether a designation should be public or private, such as factors or considerations that can be weighed and evaluated.   The district courts, therefore, are particularly ill-equipped to assess the propriety of Section 7031(c) determinations, and as such, these determinations should be left to the Secretary's discretion without judicial interference.

---

[7]  While Section 7031(c)(1)(A) dictates that a foreign government official whom the Secretary determines to be engaged in significant corruption "shall" be ineligible for entry into the United States, this immigration consequence stems from the Secretary's discretionary determination. Similarly, the Secretary must make a public or private designation pursuant to Section 7031(c)(1)(B), but this step need only occur once the Secretary makes his or her discretionary determination.

### III.    A Member of this Court has Held that Plaintiff's Challenge to the Secretary's Section 7031(c) Designation is Not Justiciable

Another member of this Court has determined that it cannot assess the propriety of a designation made pursuant to Section 7031(c) absent affirmative authorization for judicial review by Congress.[8]  *See Bautista-Rosario v. Mnuchin*, 568 F. Supp. 3d 1 (D.D.C. 2021).  In *Bautista-Rosario*, the plaintiffs—a senator from the Dominican Republic and several of his family members—challenged their Section 7031(c) designations under the APA.  *Id.* at 4-5.  The Court first observed that the Supreme Court has held that "immigration policy and decisions to admit or exclude aliens are inherently political, implicating 'the conduct of foreign relations, the war power, and the maintenance of a republican form of government.'"  *Id.* at 6 (quoting *Harisiades*, 342 U.S. at 588-89).  The Court went on to note that the district courts "are neither well-structured nor authorized to make such policies, and thus it is well-established that 'it is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.'"  *Id.* (quoting *Knauff*, 338 U.S. at 543).  The Court explained that generally speaking, Congress has not authorized the district courts to review visa denials or visa revocations for noncitizens living abroad.  *Id.* (citing 6 U.S.C. § 236(f); 8 U.S.C. § 1201(i)).  And although 7031(c) designations "are not merely visa denials or revocations," the Court found that the plaintiffs failed to identify any statutory authority that allowed it to assess the propriety of Section 7031(c) designations.  *Id.*

Further, the Court rejected the plaintiffs' argument that the APA allowed the Court to review Section 7031(c) designations.  *Id.*  The Court reasoned that "by its own terms the APA does

---

[8]  Defendants are aware of only one other district court case to raise these issues.  Although the case and the memorandum opinion and order remain under seal, the district court granted judgment for the Government.

not apply 'to the extent that . . . [other] statutes preclude judicial review.'" *Id.* (quoting 5 U.S.C. § 701(a)(1)). The Court observed that the Supreme Court has broadly interpreted this limitation, "concluding that a statute may preclude APA review 'not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history, and the nature of the administrative action involved.'" *Id.* (quoting *Block*, 467 U.S. at 345). The Court explained that "the statutory scheme and the nature of the administrative action" preclude its review of Section 7031(c) designations. *Id.* at 6-7. In doing so, the Court cited: (1) Congress' express prohibition of judicial review of visa denials and revocations; and (2) the presumption of non-reviewability of alien exclusion determinations. *Id.* at 7. Like the D.C. Circuit's inference "that the immigration laws preclude judicial review of consular visa decisions," the Court determined "that immigration laws preclude judicial review of Section 7031(c) designations." *Id.* (quoting *Saavedra Bruno*, 197 F.3d at 1162).

//

//

//

//

//

//

//

//

//

//

## **CONCLUSION**

For all of the reasons discussed above, the Court should dismiss the Complaint as it pertains to the United States Department of State, Secretary Antony J. Blinken, Assistant Secretary Todd D. Robinson, and the United States Department of State Bureau of International Narcotics and Law Enforcement Affairs.

Dated:  October 28, 2022            Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Director


*/s/ Stephen M. Elliott*
STEPHEN M. ELLIOTT (PA Bar# 203986)
Senior Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel:  (202) 353-0889  Fax:  (202) 616-8470
E-mail:  stephen.m.elliott@usdoj.gov

Counsel for Defendants

20