

**DEPARTMENT OF THE TREASURY**
WASHINGTON, D.C.

December 5, 2022

Case ID GLOMAG-22172

Kenneth Nunnenkamp
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Avenue NW
Washington, DC 20004

Re: Delyan Peevski

Dear Mr. Nunnenkamp:

As you are aware, on June 2, 2021, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) designated your clients, Delyan Slavchev Peevski (Peevski) and entities linked to Peevski — INT LTD EOOD, INTRUST PLC EAD, BM SYSTEMS EAD, INT INVEST EOOD, INTTRAFIK EOOD, and REAL ESTATES INT LTD EOOD — as Specially Designated Nationals or Blocked Persons (SDNs) pursuant to Executive Order 13818 (E.O. 13818 or "the Order") of December 20, 2017, "Blocking the Property of Persons Involved in Serious Human Rights Abuse or Corruption."

Peevski was designated for being a foreign person who is a current or former government official responsible for or complicit in, or directly or indirectly engaged in, corruption, including the misappropriation of state assets, the expropriation of private assets for personal gain, corruption related to government contracts or the extraction of natural resources, or bribery.

INT LTD EOOD and INTRUST PLC EAD were designated for being owned or controlled by, or having acted or purported to act for or on behalf of, directly or indirectly, Peevski, a person whose property and interests in property are blocked pursuant to the Order.

BM SYSTEMS EAD, INT INVEST EOOD, INTTRAFIK EOOD, and REAL ESTATES INT LTD EOOD were designated for being owned or controlled by, or having acted or purported to act for or on behalf of, directly or indirectly, INTRUST PLC EAD, a person whose property and interests in property are blocked pursuant to the Order.

Pursuant to 31 C.F.R. § 501.807 and OFAC's guidance on "Filing a Petition for Removal from an OFAC List," a person may seek administrative reconsideration of their designation by submitting arguments or evidence that the person believes establishes that an insufficient basis exists for the designation or that the circumstances resulting in their designation no longer apply. Designated persons may also propose remedial steps, such as corporate reorganization, resignation from positions in a blocked entity, or similar steps that the person believes would negate the basis for designation. In a letter dated February 8, 2022, you requested that OFAC reconsider your clients' designation as SDNs.

After reviewing all of the evidence in the record regarding your clients' designation as SDNs, including all of the materials you submitted, OFAC has determined that your clients have not submitted credible arguments or evidence establishing that an insufficient basis exists for your clients' designation or that the circumstances resulting in their designation no longer applies. In reaching this conclusion, OFAC has carefully considered all of the arguments made on behalf of your clients:

   a. The allegations articulated in the press release accompanying Peevski's designation are too general to refute;
   b. The allegations raised by OFAC are based on rumors, innuendo, and speculation generated primarily by Peevski's political opponents;
   c. Peevski does not have a financial or business relationship with Ilko Zhelyazkov (Zhelyazkov);
   d. The findings from the Bulgarian Specialized Prosecutor's Office's investigation into Peevski exonerate him from corruption allegations;
   e. Peevski denies any involvement in the "Golden Passport" scheme;
   f. Peevski denies that he engaged in "influencing local elections"; and
   g. Peevski does not make any arguments regarding the designations of INT LTD EOOD, INTRUST PLC EAD, BM SYSTEMS EAD, INT INVEST EOOD, INTTRAFIK EOOD, and REAL ESTATES INT LTD EOOD.

Evidence supporting OFAC's evaluation of each of the aforementioned arguments is included below.

   *a. The allegations articulated in the press release accompanying Peevski's designation are too general to refute;*

- In response, OFAC reiterates that there are significant details on specific allegations of Peevski's corruption included in the press release:

   o The June 2, 2021 press release announcing your clients' designation states "Peevski also engaged in corruption through his front man Zhelyazkov, the former Deputy Chief of the Bulgarian State Agency for Technical Operations and former Bulgarian State Agency for National Security (DANS) officer who was appointed to the National Bureau for Control on Special Intelligence-Gathering Devices. Peevski used Zhelyazkov to conduct a bribery scheme involving Bulgarian residency documents for foreign persons, as well as to bribe government officials through various means in exchange for their information and loyalty. For example, as of 2019, Zhelyazkov was known for offering bribes to senior Bulgarian government officials who were expected to provide information to Zhelyazkov for onward passage to Peevski. In return, Zhelyazkov would see that individuals who accepted his offer were placed in positions of authority and also provided a monthly bribe. Peevski and Zhelyazkov also had an official placed in a leadership position to embezzle funds to them in 2019. In another example, as of early 2018, these two government officials ran a scheme to sell Bulgarian residency documents where company representatives purportedly paid bribes to Bulgarian officials to ensure

their clients received citizenship documents immediately rather than making the $500,000 deposit or waiting the five years for a legitimate request to be processed."

  b. *The allegations raised by OFAC are based on rumors, innuendo, and speculation generated primarily by Peevski's political opponents;*

- In response, OFAC has re-evaluated the original reporting used in the bases for designation and maintains confidence in the veracity of the information.

  c. *Peevski does not have a financial or business relationship with Zhelyazkov;*

- In response, OFAC has re-evaluated the reporting set forth in the original bases for designation demonstrating Peevski and Zhelyazkov's financial/business relationship and continues to find it compelling.

- OFAC additionally refers your clients to the multiple examples demonstrating Peevski and Zhelyazkov's financial/business relationship outlined in the June 2, 2021 press release announcing Peevski's designation and included above.

- In addition to the original reporting used as bases for Peevski's designation, OFAC has identified additional reporting that corroborates Peevski and Zhelyazkov's financial/business relationship. One such example follows: In 2018, a senior Bulgarian official was appointed to a high-ranking leadership position, orchestrated by Zhelyaskov to ensure that Peevski had loyalty and control.

  d. *The findings from the Bulgarian Specialized Prosecutor's Office's investigation into Peevski exonerate him from corruption allegations;*

- In response, OFAC notes that while the Bulgarian Specialized Prosecutor's Office initiated an investigation into Peevski following OFAC's June 2, 2021 designation and declined to pursue charges, there are numerous differences between the Bulgarian Specialized Prosecutor's investigation and OFAC's investigation that led to Peevski's designation under E.O. 13881. Indeed, the Bulgarian Specialized Prosecutor's investigation addressed only whether Peevski violated Bulgarian criminal law, not whether OFAC had sufficient evidence to designate your clients pursuant to E.O. 13818. Moreover, the Bulgarian Specialized Prosecutor did not have access to the evidentiary sources that formed the basis of OFAC's designation of your clients. Further exploration of these differences follows:

  o The Bulgarian Specialized Prosecutor evaluated the allegations of corruption against the requirements of the Bulgarian Code of Criminal Procedure (CCP) to determine whether there was sufficient evidence to pursue criminal charges, specifically Article 211, paragraph 1. The decree clarifies that Article 211 states "there is enough data for initiating preliminary proceedings when a reasonable assumption for a committed crime can be made." The legal doctrine unilaterally accepts that the "assumption" threshold is met when enough data is collected to make a conclusion that a crime has probably been committed. To meet the "reasonable" threshold, the assumption has to be based on

3

objectively collected information, which supports the likelihood of a crime. OFAC's designations, however, do not at any point claim to be criminal charges, nor do they claim to be based on the same criminal procedures of Bulgarian law.

- o The Bulgarian Specialized Prosecutor's Office report explicitly acknowledges the difference between OFAC sanctions and Bulgarian criminal law: "for the needs of the current decree it has to be stated that in its nature the 'Magnitsky' act is not criminal law and the sanctions put in place by it are not criminal, but administrative and political in nature."

- o The Bulgarian Specialized Prosecutor's Office report states that the investigation required additional factual data from outside sources that was necessary to be able to justify any criminal charges and acknowledged that the investigation into Peevski's criminal culpability did not have the information used by the United States as a basis for designation.

- Addressing the findings of the Appellate Special Prosecutor's investigation, OFAC responds that as explained above, the results of the Bulgarian Specialized Prosecutor's investigation do not demonstrate that there was an insufficient basis to designate your clients. The Appellate Special Prosecutor's investigation only confirms that the original Bulgarian Specialized Prosecutor's investigation was performed correctly under the Bulgarian CCP and does not broach any questions about the differences between OFAC's investigation and the Bulgarian Specialized Prosecutor's investigation. Therefore, the findings of the Appellate Special Prosecutor's Office, like the Bulgarian Specialized Prosecutor's investigation itself, fail to demonstrate that there was an insufficient basis to designate your clients.

    e. *Peevski denies any involvement in the "Golden Passport" scheme;*

- In response, OFAC has re-evaluated the reporting set forth in the original bases for designation detailing Peevski's corrupt involvement in the Bulgarian citizenship by investment program, which your clients refer to as the "Golden Passport" scheme, and continues to find it compelling.

- OFAC also reiterates the information included in the June 2, 2021 press release describing Peevski's involvement in the "Golden Passport" scheme:

- o The June 2, 2021 press release announcing Peevski's designation states "Peevski also engaged in corruption through his front man Zhelyazkov, the former Deputy Chief of the Bulgarian State Agency for Technical Operations and former DANS officer who was appointed to the National Bureau for Control on Special Intelligence-Gathering Devices. Peevski used Zhelyazkov to conduct a bribery scheme involving Bulgarian residency documents for foreign persons, as well as to bribe government officials through various means in exchange for their information and loyalty....[A]s of early 2018, these two government officials ran a scheme to sell Bulgarian residency documents where company representatives purportedly paid bribes to Bulgarian officials to ensure their clients

4

received citizenship documents immediately rather than making the $500,000 deposit or waiting the five years for a legitimate request to be processed."

- Additionally, OFAC acknowledges that the Bulgarian Specialized Prosecutor investigated the Bulgarian citizenship by investment program that your clients refer to as the "Golden Passport" scheme; however, the conclusions reached by the Bulgarian Specialized Prosecutor's Office do not rebut or cast doubt on the evidence described above that supported Peevski's involvement in this scheme. Moreover, the Bulgarian Specialized Prosecutor's investigation included the following deficiencies:

    o In determining whether to pursue criminal charges with regard to Peevski's involvement in the "Golden Passport" scheme, the Bulgarian Specialized Prosecutor's Office primarily relied on the fact that Peevski and Zhelyazkov do not appear as official employees in any of the offices involved in the citizenship program, as the report details names and titles of the individuals in each office. However, at no point has OFAC claimed that Peevski or Zhelyazkov worked directly in the offices processing the citizenship documents, and their lack of presence on the organizational charts does not invalidate the argument that they ran a bribery scheme involving the citizenship program through other people.

    o The Bulgarian Specialized Prosecutor's report explicitly states that materials from the Citizenship Council, on which reviews and corrections related to applications for Bulgarian citizenship were performed, were destroyed in 2020 by order of the director of the office. However, the report does not raise any concerns about the accuracy or completeness of the information received by the office following the destruction of relevant records.

    o As previously discussed, there are significant differences between the Bulgarian Specialized Prosecutor's Office investigation into criminal charges and OFAC's investigation into Peevski that led to his June 2, 2021 designation, including that the investigation into Peevski's criminal culpability did not have the information used by the United States as a basis for designation. Nothing in the Bulgarian Specialized Prosecutor's report casts doubt on the sources used by OFAC.

- Addressing Peevski's claims about not having official responsibilities in the "Golden Passport" program, OFAC has not asserted that Peevski had to be on the employee list of the program to engage in corruption involving the program.

    o In fact, OFAC has assessed Peevski's corrupt involvement in the program was through other front people, not as a direct employee processing the applications.

- Addressing Peevski's comparison to the U.S. EB-5 visa program, one critical difference between investigations into U.S. Officials' involvement in adjudicating applications and Peevski's involvement in Bulgaria's visa program is that Peevski received bribes and kickbacks for his participation—a corrupt act justifying his designation. Therefore, this is a false comparison.

  *f. Peevski denies that he engaged in "influencing local elections";*

- OFAC responds that Peevski's actions to influence local elections in exchange for protection from criminal investigations were not used as a basis for his designation.

  *g. Peevski does not make any arguments regarding the designations of INT LTD EOOD, INTRUST PLC EAD, BM SYSTEMS EAD, INT INVEST EOOD, INTTRAFIK EOOD, and REAL ESTATES INT LTD EOOD;*

Consequently, your clients' request is denied, and Peevski, INT LTD EOOD, INTRUST PLC EAD, BM SYSTEMS EAD, INT INVEST EOOD, INTTRAFIK EOOD, and REAL ESTATES INT LTD EOOD will remain on OFAC's List of Specially Designated and Blocked Persons pursuant to E.O. 13818.

If, in the future, your clients decide to pursue the reconsideration process again, your clients will need to submit a new request, and provide OFAC new evidence as well as any other information that OFAC may request in order to process your request. For expediency purposes, please direct all questions and correspondence to OFAC to the following email: OFAC.Reconsideration@treasury.gov. You may also write OFAC at the following:

    U.S. Department of the Treasury
    Office of Foreign Assets Control
    ATTN: Office of Global Targeting
    1500 Pennsylvania Avenue, N.W. (Freedman's Bank Building)
    Washington, DC 20220

            Sincerely,

            Andrea Gacki
            Director
            Office of Foreign Assets Control