**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| DELYAN SLAVCHEV PEEVSKI, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 22-2334 (TSC) |
| ) | |
| JANET YELLEN, Secretary, ) | |
| Department of the Treasury, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT AND OPPOSITION TO
PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

DIANE KELLEHER
Assistant Director

STEPHEN M. ELLIOTT (PA Bar# 203986)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, D.C. 20005
Tel:  (202) 353-0889
Fax:  (202) 616-8470
E-mail:  stephen.m.elliott@usdoj.gov

*Counsel for Defendants*

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT ......................................................................................................................... 2

I.   State's Interpretation of Section 7031(c) did not Violate the
     APA (Count I) ................................................................................................. 2

II.  Non-Statutory (Ultra Vires) Review is Not Appropriate (Count II) ...................... 7

III. Peevski's Challenge to the Propriety of the Secretary's Section 7031(c)
     Determination is not Justiciable (Count III) ........................................................ 8

IV.  Treasury did not Violate the APA by Designating Peevski and the
     Companies He Owns or Controls (Count III) ........................................................ 9

V.   Plaintiffs Received Sufficient Information to Meaningfully Petition OFAC for
     Reconsideration (Count IV) ................................................................................ 13

CONCLUSION .................................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Afshar v. Dep't of State*,
    702 F.2d 1125 (D.C. Cir. 1983) ............................................................................. 13

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) .................................................................................................. 15

*Barnhart v. Walton*,
    535 U.S. 212 (2002) ................................................................................................. 5

*Bazzi v. Gacki*,
    468 F. Supp. 3d 70 (D.D.C. 2020) ......................................................................... 12

*Cherokee Nation v. U.S. Dep't of the Interior*,
    531 F. Supp. 3d 87 (D.D.C. 2021) .................................................................... 11, 16

*Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984) ................................................................................................. 3

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
    401 U.S. 402 (1971) .................................................................................... 11, 16

*City of Arlington v. FCC*,
    569 U.S. 290 (2013) ................................................................................................. 3

*FBME Bank Ltd v. Lew*,
    125 F. Supp. 3d 109 (D.D.C. 2015) ....................................................................... 17

*Fed. Express Corp. v. U.S. Dep't of Com.*,
    39 F.4th 756 (D.C. Cir. 2022) ............................................................................ 7, 8

*Fiallo v. Bell*,
    430 U.S. 787 (1977) ................................................................................................. 9

*GSS Grp. Ltd v. Nat'l Port Auth.*,
    680 F.3d 805 (D.C. Cir. 2012) ............................................................................... 7

*Holy Land Found. for Relief & Dev. v. Ashcroft*,
    333 F.3d 156 (D.C. Cir. 2003) ............................................................................... 17

*Islamic Am. Relief Agency v. Gonzales*,
    477 F.3d 728 (D.C. Cir. 2007) ............................................................................... 9

*Jifry v. FAA*,
    370 F.3d 1174 (D.C. Cir. 2004) ........................................................................... 16

*Karadzic v. Gacki*,
    602 F. Supp. 3d 103 (D.D.C. 2022) ..................................................................... 10

*Lopez Bello v. Smith*,
    No. 21-1727 (RBW), 2022 WL 17830226 (D.D.C. Dec. 21, 2022) ...................... 12

*Nyunt v. Chairman, Broad. Bd. of Governors*,
    589 F.3d 445 (D.C. Cir. 2009) ............................................................................... 8

*Olenga v. Gacki*,
    507 F. Supp. 3d 260 (D.D.C. 2020) ................................................................. 10, 13

*Rakhimov v. Gacki*,
    No. 19-2554 (JEB), 2020 WL 1911561 (D.D.C. Apr. 20, 2020) ...................... 12, 17

*Ray v. Turner*,
    587 F.2d 1187 (D.C. Cir. 1978) ........................................................................... 13

*Robinson v. Shell Oil Co.*,
    519 U.S. 337 (1997) ............................................................................................ 3, 4

*Telecomms. Rsch. & Action Center v. FCC*,
    750 F.2d 70 (D.C. Cir. 1984) ............................................................................... 15

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ........................................................................................... 9

*Zevallos v. Obama*,
    793 F.3d 106 (D.C. Cir. 2015) ............................................................................. 15

**Statutes**

50 U.S.C. § 1702 ......................................................................................... 11, 13, 16

Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, div. J, tit. VI, § 699L,
    121 Stat. 1844 (2007) ............................................................................................. 5

**Rules**

Local Rule 5.4 .......................................................................................................... 12, 13

Local Rule 7 ........................................................................................................... 13

**Regulation**

31 C.F.R. § 501.807 ..................................................................................... 14, 15, 17, 18

**Executive Materials**

Executive Order No. 13818 ................................................................................. 1, 9

*Proclamation 7750—To Suspend Entry as Immigrants or Nonimmigrants of Persons
  Engaged In or Benefiting From Corruption* (Jan. 12, 2004) ................................................. 5, 6

**Other Authority**

U.S. Dep't of State, *Corruption-Related Designations – Bureau of International
  Narcotics and Law Enforcement Affairs* ...................................................................... 6

## **INTRODUCTION**

Plaintiff Delyan Slavchev Peevski ("Peevski" or "Plaintiff") and the companies he owns or controls (collectively, "Plaintiffs") fail to rebut the arguments set forth by Defendants Janet Yellen, *et al.* ("Defendants") in support of their Motion to Dismiss or, in the Alternative, for Summary Judgment.  In the end, the Department of State permissibly interpreted Section 7031(c) of the Department of State, Foreign Operations, and Related Programs Appropriations Act ("Section 7031(c)") as applying to both current and former corrupt officials of foreign governments, like Peevski.  And Defendants put forth sufficient unclassified and classified information to support Peevski's designation by the Office of Foreign Assets Control ("OFAC") under Executive Order No. 13818 ("E.O. 13818" or "Executive Order").  Pursuant to the agency's administrative reconsideration process, Plaintiff Peevski obtained all unclassified information supporting his designation and received a comprehensive reevaluation of his designation by OFAC after it considered all of the arguments and documentation he submitted.

Plaintiffs have not demonstrated that summary judgment should be granted in their favor with regard to the Department of State defendants ("State").  To begin, Plaintiffs concede that the Court should afford *Chevron* deference to State's permissible interpretation of Section 7031(c) in the event that the Court finds the term "officials of a foreign government" ambiguous, as Defendants maintain it is.  Congress was silent about whether the term "officials" encompassed current, former, or both current and former government personnel, thus the Court should defer to State's reasonable interpretation that the term covers both current and former officials.  Because the Court may reach this question of statutory interpretation under the Administrative Procedure Act ("APA"), it should not entertain Plaintiffs' *ultra vires* claim.  To the extent Plaintiffs challenge the factual propriety of State's Section 7031(c) determination, the Court should not second-guess

the decisions of the Executive regarding who may and may not enter this country.  Further, the APA does not afford Plaintiffs a right to challenge a final agency action when, as here, another statute precludes judicial review, and the decision is left to the agency's discretion.

Plaintiffs likewise have not established that summary judgment should be granted in their favor with regard to the Department of the Treasury defendants ("Treasury").  For starters, the unclassified administrative record amply supports the agency's conclusion that Peevski engaged in significant corruption as a Bulgarian government official, and the Court may review the classified version of the record *ex parte*, *in camera*.  Plaintiffs have not and cannot cite to any support for their assertion that the Court must limit its review to only the OFAC press release and federal register notice.  While Plaintiffs allege that they have not been afforded a meaningful opportunity to petition OFAC to reconsider their designations, the unclassified information available to Plaintiffs set forth more than ample detail for them to engage in the administrative reconsideration process.  Plaintiffs may not agree with the results of the reconsideration process, but they cannot now argue that OFAC erred by reaching a final, comprehensive decision when they determined for themselves to participate in that process.  And if Plaintiffs choose to do so— as they have indicated—they may revive the administrative reconsideration process with the submission of a new petition for reconsideration and supplemental information.

For these reasons, as discussed more fully below, the Court should grant Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

## ARGUMENT

I.   **State's Interpretation of Section 7031(c) did not Violate the APA (Count I)**

When determining that Peevski met the criteria for designation under Section 7031(c), State permissibly interpreted Section 7031(c) as applying to current and former government

officials.  *See* Defs.' Mem. in Supp. of Mot. to Dismiss or, in the Alt., Summ. J. ("Defs.' Mot."),
ECF No. 29-1, at 16-22.  Plaintiffs acknowledge that *Chevron* deference to this interpretation
would be proper in the event the Court deems the phrase "officials of a foreign government"
ambiguous.  *See* Pls.' Mem. in Supp. of Opp'n and Cross-Mot. for Summ. J. ("Pls.' Mot."), ECF
No. 32-1, at 35-37.  The Court should afford such deference here and find State's interpretation
permissible, contrary to Plaintiffs' contention that the phrase is unambiguous, *see id.* 31-35,  t.

The phrase "officials of a foreign government" is ambiguous, and thus the Court should
defer to State's reasonable interpretation of Section 7031(c).  *See City of Arlington v. FCC*, 569
U.S. 290, 296 (2013) (quoting *Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837,
843 (1984)).  Section 7031(c) provides that "officials" of foreign governments and their immediate
family members who the Secretary has credible information have been involved in significant
corruption or a gross violation of human rights are ineligible for entry into the United States.  *See*
Section 7031(c)(1)(A).  But Section 7031(c) does not modify "officials" of foreign governments,
rather this phrase "is silent or ambiguous with respect to" whether it applies equally to both current
and former officials.  *City of Arlington*, 569 U.S. at 296

Plaintiffs insist that the phrase "officials of a foreign government" is unambiguous because
Congress chose not to modify the phrase with "former."  *See* Pls.' Mot. at 33.  Plaintiffs miss the
point.  While Congress could have crafted language that included "former," it just as easily could
have inserted "current" before the operative phrase— which is Plaintiffs' preferred interpretation.
*See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).  The Supreme Court considered this
precise argument in *Robinson* when assessing whether the term "employees" in Section 704(a) of
Title VII applied equally to current and former employees for purposes of an anti-retaliation
lawsuit brought by a terminated employee.  *Id*.  There, the Supreme Court explained "[t]hat the

statute could have expressly included the phrase 'former employees' does not aid [the Court's] inquiry.  Congress also could have used the phrase 'current employees.'"  *Id.*  The same is true in this case.

Similarly, the inclusion of a temporal modifier in other sections of the Department of State, Foreign Operations, and Related Programs Appropriations Act does not mean Section 7031(c) is only applicable to current officials.  *See* Pls.' Mot. at 34.  Specifically, Plaintiffs cite Section 7070, which provides that government funds may be utilized "to provide protective services to former or retired senior [State] officials or employees," and argue Congress could have included similar language in Section 7031(c) if it wanted to do so.  *Id.*  But the fact that some sections of the Appropriations Act apply expressly to former officials only means that the phrase "officials of a foreign government" in Section 7031(c) is innately ambiguous because it omits a temporal limitation.  *See Robinson*, 519 U.S. at 343-44.  Again, the Supreme Court considered this exact issue in *Robinson*.  *Id.*  The Supreme Court concluded that "[o]nce it is established that the term 'employees' includes former employees in some sections, but not in others, the term standing alone is necessarily ambiguous[.]"[1]  *Id.*  Plaintiffs completely ignore the *Robinson* decision though it disposed of the very argument they advance here.  *See* Pls.' Mot. at 30-31.

Because the operative term is ambiguous, "the question for the court is whether [State's] answer is based on a permissible construction of the statute," which is undeniably true.  *City of*

---

[1]  Plaintiffs also assert that "officials" constitutes the "adjectival modifier 'of a foreign government'" and indicates that the provision only applies to current officials because "[o]ne is an official 'of' a foreign government while one serves in that position." Pls.' Mot. at 34-35.  Plaintiffs cite no authority for this interpretation.  The Supreme Court in *Robinson* rejected equally unpersuasive reasoning when confronted with an argument that the term "his" modifying "employees" indicated that the provision only applied to current employees.  *See Robinson*, 519 U.S. at 343-44.  The Supreme Court explained that the "phrase 'his employees' could include 'his' former employees, but still exclude persons who have never worked for the particular employer being charged with retaliation."  *Id.*

*Arlington*, 569 U.S. at 296 (citation omitted).  *See* Defs.' Mem. at 19-22.  To begin, when Congress first authorized Section 7031(c) in Section 699L of the Fiscal Year FY 2008 annual appropriations act, it expressly stated that the new authority was meant to further "the National Strategy to Internationalize Efforts Against Kleptocracy and Presidential Proclamation 7750[.]"  *See* Consolidated Appropriations Act, 2008, Pub. L. No. 110-161, div. J, tit. VI, § 699L, 121 Stat. 1844, 2373-74 (2007).   And Presidential Proclamation 7750 explicitly suspended the immigrant or nonimmigrant entry into the United States of certain public officials or former public officials engaged in corruption.  *See Proclamation 7750—To Suspend Entry as Immigrants or Nonimmigrants of Persons Engaged In or Benefiting From Corruption* (Jan. 12, 2004), § 1, https://www.govinfo.gov/content/pkg/WCPD-2004-01-19/pdf/WCPD-2004-01-19-Pg61-2.pdf.

Further, State, as required by Section 7031(c)(4), has unequivocally informed Congress that its longstanding interpretation of the term "officials" encompasses both current and former government actors.  *See* Section 7031(c)(4) ("[T]he Secretary of State shall submit a report, including a classified annex if necessary, to [Congress] describing the information related to corruption or violation of human rights concerning each of the individuals found ineligible in the previous 12 months[.]").  Yet Congress has declined to limit Section 7031(c) to only current officials even though it has updated the provision on several occasions since the statute's passage. *See Barnhart v. Walton*, 535 U.S. 212, 220 (2002) (observing "Congress intended the Agency's interpretation, or at least understood the interpretation as statutorily permissible" given that it amended the statute numerous times without changing the operative term).  Finally, restricting the term "officials" to reach only current government actors is not compatible with the text and purpose of Section 7031(c) given that often evidence of significant corruption only becomes known to State after the individual has left public office, not to mention an alternative

5

interpretation would allow current officials to simply resign from their formal government positions and avoid Section 7031(c) ramifications.  *See* U.S. Dep't of State, *Corruption-Related Designations – Bureau of International Narcotics and Law Enforcement Affairs*, https://www.state.gov/corruption-related-designations-bureau-of-international-narcotics-and-law-enforcement-affairs-2/.

Plaintiffs raise three equally unpersuasive arguments as to why State's interpretation is not permissible.  *See* Pls.' Mot. at 35-37.  First, they contend that because Presidential Proclamation 7750 affirmatively includes the term "former public officials," Congress' omission of "former" in Section 7031(c) must have been deliberate.  *Id.* at 35-36.  But the latter omission of this language does not undermine Congress's express directive that Section 7031(c) should further the goals of Presidential Proclamation 7750—*i.e.* applying the subsequent authority to both current and former officials.  *See* Defs.' Mot. at 19-20.  Second, Plaintiffs assert that Section 7031(c) can further the policy of Presidential Proclamation 7750 without "incorporat[ing] every aspect of that policy." Pls.' Mot. at 36.  Plaintiffs, however, fail to explain how the policy directives in Presidential Proclamation 7750 can be adequately furthered by Section 7031(c) if the authority only applies to half of those persons affected by the Presidential Proclamation.  *See generally id.*  Third, Plaintiffs contend that because Congress omitted the "in furtherance" of Presidential Proclamation 7750 language in the version of Section 7031(c) modified in 2015, the instructive no longer applies.  *Id.* at 36-37.  But the salient point is that at the original time of passage, Congress stated that one of the purposes of Section  7031(c) was to further the goals of Presidential Proclamation 7750, which expressly pertained to both current and former officials.  Plaintiffs offer no basis showing Congress has departed from those original policy goals as it has renewed Section 7031(c).

Plaintiffs do not address the remaining arguments raised by Defendants in their Motion to Dismiss or, in the Alternative, for Summary Judgment. *Compare* Defs.' Mot at 20-22, *with* Pls.' Mot. at 35-37. First, they disregard the fact that State has unequivocally informed Congress that it interprets Section 7031(c) as being applicable to former officials, and Congress has declined to alter the provision to only apply to current officials. *See* Defs.' Mot. at 20-21. Similarly, Plaintiffs do not address Defendants' argument that restricting the term "officials" to reach only current government actors is not compatible with the text and purpose of Section 7031(c). *Id.* at 21-22. The Court should deem any objection to these arguments waived. *See, e.g.*, *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 812 (D.C. Cir. 2012) (noting that an argument that could have been but was not raised in an opposition to a motion to dismiss was waived).

For these reasons, the Court should defer to State's permissible interpretation of "officials" in Section 7031(c).

## II.    Non-Statutory (Ultra Vires) Review is Not Appropriate (Count II)

Ultra vires claims are limited to "extreme agency error where the agency has stepped so plainly beyond the bounds of [its statutory authority], or acted so clearly in defiance of it, as to warrant the immediate intervention of an equity court[.]" *Fed. Express Corp. v. U.S. Dep't of Com.*, 39 F.4th 756, 764 (D.C. Cir. 2022) (quotations omitted). A litigant may successfully raise an ultra vires claim only when: "(i) there is no express statutory preclusion of all judicial review; (ii) 'there is no alternative procedure for review of the statutory claim; and (iii) the agency plainly acts in excess of its delegated powers and contrary to a specific prohibition in the statute that is

clear and mandatory[.]'" *Id.* at 763 (quoting *Nyunt v. Chairman, Broad. Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009)).

Plaintiffs ask the Court to invoke the doctrine of non-statutory review because they claim that State applied an incorrect interpretation of "officials" in Section 7031(c). *See* Am. Compl. ¶¶ 46-47, ECF No. 28. But Plaintiffs have an alternative mechanism to challenge State's allegedly improper interpretation of Section 7031(c)—the APA. *Id.* ¶¶ 56-62; *see Fed. Express Corp.*, 39 F.4th at 763 (concluding that non-statutory review was appropriate because the plaintiff was "unable to bring a traditional [APA] challenge"). Accordingly, Plaintiffs have an "alternative procedure for review of the[ir] statutory claim[.]" *Fed. Express Corp.*, 39 F.4th at 763. Regardless, State did not act "so plainly beyond the bounds" of its statutory authority, *id.* at 764— State reasonably interpreted Section 7031(c) to encompass both current and former government. *See* Defs.' Mot. at 19-22.

### III.   Peevski's Challenge to the Propriety of the Secretary's Section 7031(c) Determination is not Justiciable (Count III)

Plaintiffs appear to modify their argument with regard to the propriety of State's Section 7031(c) determination. *See* Pls.' Mot. at 37-45. In the amended Complaint, Plaintiffs indicated that State's 7031(c) determination was based on insufficient information and was therefore arbitrary and capricious in violation of the APA— arguing that the factual basis for State's determination was defective. *See* Am. Compl. ¶ 69 ("Defendants' imposition of sanctions on Plaintiffs on the only record made available . . . lacks facts and circumstances adequate to support that action and is therefore arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law."). But the factual propriety of the State's Section 7031(c) determination is a non-justiciable question; a fundamental separation-of-powers principle renders the political branches' decisions to exclude noncitizens abroad judicially unreviewable. *See* Defs.' Mot. at 24-

34; *see, e.g.*, *Trump v. Hawaii*, 138 S. Ct. 2392, 2418 (2018), *remanded*, 898 F.3d 1266 (9th Cir. 2018), (citing *Fiallo v. Bell*, 430 U.S. 787, 792 (1977)) (acknowledging that "[f]or more than a century" the Supreme Court has consistently held that separation-of-powers principles firmly commit to Congress and the Executive "the admission and exclusion of foreign nationals").

Plaintiffs argue that Section 7031(c) determinations are a form of economic sanction, not entry denials that are non-justiciable. *See* Pls.' Mot. at 39-40. But the only mandatory repercussion that flows from State's Section 7031(c) determination is that the public official cannot enter the United States. *See* Section 7031(c)(1)(A). While State may, if it chooses, make the determination public, there are no formal consequences for doing so. *See* Section 7031(c)(1)(B). Plaintiffs simply provide no support for their perfunctory assertion that State publicly names corrupt officials "to increase the adverse impact of a Section 7031(c) determination," rather than, for example, drawing attention to the Government's efforts to fight corruption abroad. *See* Pls.' Mot. at 40.

Now, however, Plaintiffs clarify that they are not challenging the factual basis for State's Section 7031(c) determination, but rather *exclusively* argue that Section 7031(c) applies to only current government officials, not former officials. *See* Pls.' Mot. at 31-39. Defendants do not contend that the Court lacks jurisdiction to reach this issue of statutory interpretation. *See generally* Defs.' Mot. at 16-22. To the extent Plaintiffs are in fact challenging the factual basis for State's Section 7031(c) determination, they have failed to rebut Defendants' position that any such challenge poses a non-justiciable question. *See* Defs.' Mot. at 24-34.

## IV.    Treasury did not Violate the APA by Designating Peevski and the Companies He Owns or Controls (Count III)

The Court should afford substantial deference to OFAC's designation of Peevski under E.O. 13818, which was based on more than adequate unclassified evidence, as well as classified information. *See Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007)

("[O]ur review—in an area at the intersection of national security, foreign policy, and administrative law—is extremely deferential."); *see also Karadzic v. Gacki*, 602 F. Supp. 3d 103, 115 (D.D.C. 2022) (recognizing that when assessing an OFAC agency action the "standard of review in the APA context is not demanding . . . [and] [t]his is especially true when the actions under review involve foreign affairs and national security"); *Olenga v. Gacki*, 507 F. Supp. 3d 260, 280 (D.D.C. 2020) ("The D.C. Circuit has shown 'extreme' deference to blocking orders, which fall 'at the intersection of national security, foreign policy, and administrative law.'") (citation omitted).

Plaintiffs contend that OFAC's designation of Peevski rested on insufficient evidence and is thus arbitrary and capricious in violation of the APA.  *See* Am. Compl. ¶¶ 67-71; *see also* Pls.' Mot. at 24-27.  As conveyed to Plaintiffs, OFAC based its designation of Peevski on, *inter alia*, the following factors:

- Peevski served as a Bulgarian member of parliament who "regularly engaged in corruption, using influence peddling and bribes to protect himself from public scrutiny and exert control over key institutions and sectors in Bulgarian society."  Administrative Record ("A.R.") 26.

- Peevski engaged in corruption through Zhelyazkov, the former Deputy Chief of the Bulgarian State Agency for Technical Operations and former Bulgarian State Agency for National Security officer who was appointed to the National Bureau for Control on Special Intelligence-Gathering Devices.  *Id.*

- Peevski conducted a bribery scheme through Zhelyazkov, involving Bulgarian residency documents for foreign persons, and he also bribed government officials through various means in exchange for their information and loyalty.  A.R. 27; *see also* Denial Letter, ECF No. 29-2 at 3 ("OFAC has identified additional reporting that . . . [i]n 2018 a senior

Bulgarian official was appointed to a high-ranking leadership position, orchestrated by Zhelyazkov to ensure that Peevski had loyalty and control.").

- Peevski received information from Zhelyazkov that he received by bribing senior Bulgarian government officials.  A.R. 27.

- Peevski also placed an official in a leadership position in 2019 to embezzle funds for him and Zhelyazkov.  *Id.*

- Peevski masterminded a scheme to sell Bulgarian residency documents; company representatives paid bribes to Bulgarian officials to ensure their clients received citizenship documents immediately, rather than making the $500,000 deposit or waiting the five years for a legitimate request to be processed.  *Id.*

Ignoring substantial administrative caselaw, Plaintiffs assert that OFAC may only defend itself with an administrative record limited to the unclassified press release issued by OFAC in support of Peevski's designation.  *See* Pls.' Mot. at 24.  To begin, Plaintiffs have not and cannot provide any authority that would support limiting this Court's consideration of the entire administrative record in this APA record-review case.  *See generally id.*  Indeed, judicial review is based upon the "full administrative record that was before [the agency] at the time [it] made [its] decision."  *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971).  "The agency must set forth the entire record, which includes all materials directly or indirectly relied on to make all decisions, not just final decisions."  *Cherokee Nation v. U.S. Dep't of the Interior*, 531 F. Supp. 3d 87, 94 (D.D.C. 2021) (citation omitted).  Moreover, the International Emergency Economic Powers Act ("IEEPA") allows OFAC to rely on classified information to support Plaintiffs' designations and the Court to consider such information *ex parte*, *in camera*.  *See* 50 U.S.C. § 1702(c).  In any event, the information contained within the publicly available press release set forth the unclassified basis for Plaintiffs' designations and establishes the validity of OFAC's decision.  *See* A.R. 24-28.

At the same time, Plaintiffs also contend (without support or citation) that the press release issued by OFAC in conjunction with Peevski's designation cannot form the factual basis for its determination.[2]  *See* Pls.' Mot. at 25.  Indeed, the OFAC press release memorializes the robust unclassified factual basis for Peevski's designation.  *See* A.R. 24-28.  And members of this Court have consistently and routinely acknowledged that OFAC's press releases afford persons the factual predicate for their respective designations.  *See, e.g.*, *Lopez Bello v. Smith*, - - - F. Supp. 3d - - - - , No. 21-1727 (RBW), 2022 WL 17830226, at *13 (D.D.C. Dec. 21, 2022) ("[P]ress releases have also been considered 'sufficiently detailed' summaries to satisfy the notice standard when they adequately explain the OFAC's reasons to designate a plaintiff[.]"), appeal filed, No. 23-5038 (D.C. Cir. Feb. 21, 2023); *Bazzi v. Gacki*, 468 F. Supp. 3d 70, 80 (D.D.C. 2020) ("The details in the press release do not leave Bazzi stumbling toward a moving target.") (quotation and citation omitted); *Rakhimov v. Gacki*, No. 19-2554 (JEB), 2020 WL 1911561, at *5 (D.D.C. Apr. 20, 2020) ("[T]he Government is entitled to rely on . . . its own 'press release' in making and justifying its designation decisions.") (citation omitted).

Lastly, with no substantive basis to challenge the designation, Plaintiffs ask the Court to review the administrative record and ascertain whether information has been improperly withheld as privileged or classified.  *See* Pls.' Mot. at 27-28.  To be clear, Defendants have not redacted any information based on a formal assertion of privilege.  Rather, information has been withheld from the administrative record because it is: (1) currently and properly classified; (2) personally identifying information, as defined by Local Rule 5.4(f); or (3) non-responsive information pertaining to persons not subject to this litigation.  *See* Certification of Administrative Record,

---

[2]  Defendants acknowledge that the press release contained a discreet piece of information that did not form a basis for Peevski's designation, as OFAC likewise acknowledged in its letter denying Peevski's petition for reconsideration.  *See* Denial Letter at 6.

ECF No. 22-1.  Such omissions are appropriate under IEEPA and consistent with caselaw in this Circuit.  *See, e.g.*, *Olenga*, 507 F. Supp. 3d at 276 ("IEEPA specifically provides that if a designation is 'based on classified information' then 'such information may be submitted to the reviewing court ex parte and in camera.'") (quoting 50 U.S.C. § 1702(c)).  Moreover, it is not the Court's job to make assessments about whether information is properly classified; such matters are left to the judgment of the Executive.  *Cf. Afshar v. Dep't of State*, 702 F.2d 1125, 1130 (D.C. Cir. 1983) (holding that FOIA "bars the courts from prying loose from the government even the smallest bit of information that is properly classified or would disclose intelligence sources or methods"); *Ray v. Turner*, 587 F.2d 1187, 1194 (D.C. Cir. 1978) ("[T]he executive had 'unique insights into what adverse affects might occur as a result of public disclosure of a particular classified record.'").  The only supposed error cited by Plaintiffs, the purported "blunderbluss" approach, was OFAC's redactions in a federal register notice included in the administrative record.  *See* Pls.' Mot. at 28.  These redactions correspond to dates of birth, as OFAC anticipated that the Federal Register notice might eventually be placed on the public docket.  *See* Local Rule 5.4(f) ("The following personal identifiers shall be excluded, or redacted where inclusion is necessary, from all electronically filed documents unless otherwise ordered by the Court."); *see also* A.R. 47. Defendants' actions were both prudent and prescient since Plaintiffs improperly filed the entire administrative record on the public docket in violation of Local Rule 7(n).  *See* Local Rule 7(n)(1) ("Unless so requested by the Court, the entire administrative record shall not be filed with the Court."); *see also* Pls.' Mot, Ex. 2, ECF No. 32-3.

## V. Plaintiffs Received Sufficient Information to Meaningfully Petition OFAC for Reconsideration (Count IV)

Notwithstanding Plaintiffs' deficient challenges to Peevki's designation, OFAC afforded him a meaningful opportunity to challenge his designation.  *See* Am. Compl. ¶¶ 72-79; *see also*

Pls.' Mot. at 17-24.   Taking advantage of the existing administrative process, Peevski filed a petition for reconsideration in February 2022.[3]   *See* 31 C.F.R. § 501.807 (explaining that a blocked person "may seek administrative reconsideration of his, her or its designation . . . , or assert that the circumstances resulting in the designation no longer apply, and thus seek to have the designation rescinded"); *see also* Denial Letter at 1.   "After reviewing all of the evidence in the record regarding [Peevski's] designation . . . , including all of the materials [Peevski] submitted," OFAC denied the request for reconsideration on December 5, 2022.   Denial Letter at 2.   As previously discussed, OFAC provided Plaintiffs all of the unclassified grounds for Peevski's designation, *see* A.R. 24-27, and Peevski put forth a comprehensive response in his petition. *Compare* A.R. 27 (explaining that Peevski conceived a scheme to sell Bulgarian residency documents), *with* Denial Letter at 4 (denying any involvement in the "golden passport" scheme). Plaintiffs have chosen not to challenge OFAC's denial of their petition for reconsideration, which constitutes a final agency decision that may be challenged under the APA.   *See* Pls.' Mot. at 29-30.

Citing the purported delay in providing the evidentiary memorandum and exhibits supporting Peevski's designation, Plaintiffs say Peevski was denied a "meaningful ability to contest [his] designation."[4]   Pls.' Mot. at 18.   But OFAC disclosed the unclassified designation

---

[3]   Defendants honored Plaintiffs' request to treat as confidential the materials Peevski submitted in support of his petition for reconsideration.   *See* Pls.' Mot. at 29.   While Defendants included the denial letter as an exhibit to their motion, they did not include anything on the public docket that came directly from Peevski.   And the denial letter itself does not contain any information that could be considered confidential in nature.   Plaintiffs appear to acknowledge as much—they neither asked Defendants to remove the letter from the public docket nor moved to strike the exhibit.

[4]   Defendants provided Plaintiffs the designation evidentiary memorandum and supporting exhibits on October 14, 2022.   In response to the instant lawsuit brought pursuant to the APA, Defendants finalized the administrative record for this case and provided it to Plaintiffs on November 28, 2022.

evidentiary memorandum and supporting exhibits in October 2022, at which time Plaintiffs could have signaled to the Government that it had additional information pertinent to Peevski's pending petition for reconsideration.  Plaintiffs chose not to do so.  Given that Plaintiffs initiated this case based, in part, on OFAC's supposed delay in reaching a final decision on the petition, OFAC continued its evaluation of Plaintiffs' request—as it informed Plaintiffs—and issued a decision after an exhaustive review of all available information.  *See* Defs' Mot. at 39-44.  Most importantly, the OFAC regulation does not limit the number of times Plaintiffs may petition for reconsideration. *See* OFAC Denial Letter at 6 ("If, in the future, your client decides to pursue the reconsideration process again, your client will need to submit a new request[.]"); *see also Zevallos v. Obama*, 793 F.3d 106, 110 (D.C. Cir. 2015) ("A designated person can request delisting as many times as he likes.").  Plaintiffs may reengage in the administrative process at any time, and thus Peevski has not been prejudiced in any manner.  *See* 31 C.F.R. § 501.807. ("A person may seek administrative reconsideration of his, her or its designation[.]").

Plaintiffs unpersuasively cite the "undue delay" factors to argue that OFAC should have provided the evidentiary memorandum and supporting exhibits on a swifter timetable.  *See* Pls.' Mot. at 20 (citing *Telecomms. Rsch. & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)).  But Defendants provided the unclassified version of the designation evidentiary and supporting exhibits in October 2022, as well as the formal administrative record for this case in November 2022.  Whether OFAC provided the administrative record on a schedule that Plaintiffs found too attenuated is simply moot.  *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citation omitted) ("No matter how vehemently the parties continue to dispute the lawfulness of the conduct

---

*See* Notice, ECF No. 22.  The administrative record is almost entirely comprised of the designation evidentiary memorandum and supporting exhibits.  *Id.*

that precipitated the lawsuit, the case is moot if the dispute is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.").

Based on Defendants' alleged "undue delay" in providing the designation memorandum and supporting exhibits, Plaintiffs reiterate their baseless contention that the administrative record in this litigation should be limited to the press release and the federal register notice.  *See* Pls.' Mot. at 21-22.  Again, Plaintiffs have not provided any authority that supports their position that the Court should not consider the entire administrative record in this APA case.  *See generally id.* Plaintiffs' lawsuit advances claims pursuant to the APA and, therefore, the Court's review is grounded on all of the information directly or indirectly considered by the relevant agency decision-maker.  *See Citizens to Pres. Overton Park, Inc.*, 401 U.S. at 420; *Cherokee Nation*, 531 F. Supp. 3d at 94.  Here, the administrative record includes not only unclassified information memorialized in the press release, but also classified information that cannot be shared with Plaintiffs, but which will be submitted to the Court *ex parte*, *in camera*.  *See* 50 U.S.C. § 1702(c). Plaintiffs simply have no legal basis to ask the Court to limit its review to only the information in a portion of the administrative record, in conflict with IEEPA.  *See* Pls.' Mot. at 22 (acknowledging that their proposed remedy is "novel").

For the first time in their opposition and cross-motion, Plaintiffs now expressly seek unclassified summaries of the classified basis for their designations.  *See* Pls.' Mot. at 17.  As previously addressed, the courts in this Circuit have consistently held that unclassified summaries generally are not required where classified information is part of an administrative record.  *See, e.g.*, *Jifry v. FAA*, 370 F.3d 1174, 1183-84 (D.C. Cir. 2004) (holding that the Government satisfied the notice requirements of due process by informing foreign pilots that their airmen certificates had been revoked based on the agency's determination that the pilots were a "security threat.");

*Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 164 (D.C. Cir. 2003) (rejecting plaintiffs' argument "that due process prevents its designation [by Treasury] based upon classified information to which it has not had access"); *FBME Bank Ltd v. Lew*, 125 F. Supp. 3d  109, 119 n.2 (D.D.C. 2015) (concluding that, while "unclassified summaries of classified information on which an agency relied may be helpful to litigants, they are not required"); *Rakhimov*, 2020 WL 1911561, at *7 (declining to "impose the unprecedented remedy of mandating the issuance of an unclassified summary or allowing his counsel access to classified material").  The same is true in this case.

While Plaintiffs are not challenging OFAC's denial of Peevski's reconsideration petition, they include a number of assertions about the delisting process that are not accurate.  Peevski had a reasonable opportunity to seek delisting, and what Plaintiffs are mostly unhappy about is the result, rather than the process.

First, Plaintiffs contend that the Court should not consider "OFAC's reconsideration action final."  *See* Pls' Mot. at 30.  But OFAC reached a final decision based on all of the information available to the final decision-maker.  *See* Denial Letter.  Plaintiffs can challenge the final decision and seek reconsideration a second time, but they cannot ask the Court to simply pretend that OFAC did not reach a final decision.  *See* 31 C.F.R. § 501.807(d) ("After [OFAC]  has conducted a review of the request for reconsideration, it will provide a written decision to the blocked person[.]").

Second, Plaintiffs maintain that they informed OFAC that they had "more information to submit" and incorrectly suggest that the agency disregarded this development. Pls.' Mot. at 29-30.  But Plaintiffs waited to provide this update until after they received OFAC's denial of Peevski's petition on December 5, 2022.  Plaintiffs had in their possession the designation evidentiary memorandum, supporting exhibits, and press release since October 14, 2022, yet

waited until *after* OFAC issued a final decision on the pending petition to inform OFAC, through counsel, that they intend to submit supplemental information.

Third, Plaintiffs allege that OFAC did not inform them about the behavior that OFAC expects them to change. *See* Pls.' Mot. at 18. Plaintiff Peevski, however, denies any wrongdoing whatsoever. *See* Denial Letter.

Finally, the suggestion that OFAC unlawfully withheld a meeting from Plaintiffs during the reconsideration process is also untrue. Plaintiffs allege that OFAC "repeated[ly] refus[ed] to meet with Plaintiffs unless they dismiss[ed] the lawsuit[.]" Pls.' Mot. at 23-24. OFAC has no obligation to grant such a request. *See* 31 C.F.R. § 501.807(c) ("A blocked person seeking unblocking . . . may request a meeting with the Office of Foreign Assets Control; however, such meetings are not required, and the office may, at its discretion, decline to conduct such meetings prior to completing a review pursuant to this section."). OFAC—at Plaintiffs' request—agreed to an in-person meeting with Plaintiffs' counsel and to reach a determination on any renewed petition for reconsideration on a reasonable timetable, but only if Plaintiffs dismissed the instant lawsuit *without prejudice* pending a final decision on the renewed petition.

//

//

//

//

//

//

//

//

//

//

## **CONCLUSION**

For all of the reasons discussed above, the Court should grant Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

Dated:  April 24, 2023                        Respectfully submitted,

                                              BRIAN M. BOYNTON
                                              Principal Deputy Assistant Attorney General

                                              DIANE KELLEHER
                                              Assistant Director


                                              */s/ Stephen M. Elliott*
                                              STEPHEN M. ELLIOTT (PA Bar# 203986)
                                              Senior Trial Counsel
                                              United States Department of Justice
                                              Civil Division, Federal Programs Branch
                                              1100 L St. NW
                                              Washington, DC 20005
                                              Tel:  (202) 353-0889  Fax:  (202) 616-8470
                                              E-mail:  stephen.m.elliott@usdoj.gov

                                              Counsel for Defendants