**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ———————————————— | ) | |
| DELYAN SLAVCHEV PEEVSKI, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-2334 (TSC) |
| | ) | |
| JANET YELLEN, Secretary, | ) | |
| Department of the Treasury, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| ———————————————— | ) | |

**RESPONSE TO PLAINTIFFS' SUPPLEMENTAL BRIEF**

Defendants Janet Yellen, *et al.* ("Defendants') respectfully submit their response to the supplemental brief submitted by Plaintiffs Delyan Slavchev Peevski, *et al.* ("Plaintiffs"). *See* Pls.' Supp. Brief, ECF No. 43 ("Pls.' Supp. Br."). Consistent with the Court's directive, Defendants filed a succinct supplemental brief that addresses the Supreme Court's decision in *Loper Bright Enter., v. Raimondo*, 144 S. Ct. 2244 (2024), and its relevance to this case. *See* Defs.' Supp. Br., ECF No. 42 ("Defs.' Supp. Br."). Plaintiffs took a different approach, raising a series of inapposite issues that, at best, attempt to shoehorn new legal arguments into a case ripe for judicial review. Defendants will briefly address Plaintiffs' arguments, but in the end, the Court should look to the Department of State ("State") and its reasoned judgement in matters of national security and foreign policy to help ascertain the reasonable interpretation of Section 7031(c).

*First*, Plaintiffs attempt to narrowly construe one of the Supreme Court's primary directives in *Loper Bright*. *See* Pls.' Supp. Br. at 7, 10. Defendants acknowledge that the Supreme Court overruled *Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984), and,

accordingly, withdrew their reliance on the case.  *See* Defs.' Supp. Br. at 2.  The Supreme Court, however, also clearly held that this Court may "seek aid from the interpretations" of the relevant agency "responsible for implementing particular statutes." *Loper Bright Enter.*, 144 S. Ct. at 2262. In contrast, Plaintiffs attempt to recast the Supreme Court's decision, alleging that "the court may elect to consider how the agency interprets the statute . . . *only* where the agency provided an interpretation 'issued contemporaneously with the statute at issue.'"  Pls.' Supp. Br. at 7 (citing *Loper Bright Enter.*, 144 S. Ct. at 2262) (emphasis added).  While such a contemporaneous interpretation certainly warrants the district court's attention, the Supreme Court did not conclude that an agency's interpretation of a statute should otherwise be ignored.  Quite the contrary, the weight afforded to an agency's interpretation will depend on "'the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control.'" *Loper Bright Enter.*, 144 S. Ct. at 2259 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  "And although an agency's interpretation of a statute 'cannot bind a court,' it may be especially informative 'to the extent it rests on factual premises within [the agency's] expertise.'" *Id.* at 2267 (citing *Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 98, n. 8 (1983)).

*Second*, Plaintiffs argue that the *Loper Bright* decision has a bearing on regulatory interpretation, an issue that is not before the Court.  *See* Pls.' Supp Br. at 8, 16-19.  First and foremost, the Supreme Court did not squarely address what, if any, deference should be afforded to an agency's interpretation of its own regulation—so-called *Auer* deference.  *See generally Loper Bright Enter.*, 144 S. Ct. at 2254-73.  Regardless, Defendants do not argue that the Court should defer to Defendants' interpretation of *any* regulation.  *See* Defs.' Mem. in Supp. of Mot. to Dismiss or, in the Alt., for Summ. J. at 22, ECF No. 29-1 ("Defs.' Mem.").  Nor do Plaintiffs assert that the

Government wrongly interpreted a term or phrase in a regulation.  *See* Pls.' Mem. in Supp. Mot. for Summ. J., ECF No. 32 ("Pls.' Mem.").  Instead, Plaintiffs appear to argue that Defendants have failed to unilaterally incorporate a non-existent timetable into the Department of the Treasury's regulation addressing requests for reconsideration submitted to the Office of Foreign Assets Control ("OFAC").  *See* Pls.' Supp. Br. 16-18 (citing 31 C.F.R. § 501.807).  But 31 C.F.R. § 501.807 does not provide a timetable for how long OFAC may take to consider the merits of a request for reconsideration.  *See* 31 C.F.R. § 501.807(b)(3) ("After OFAC has conducted a review of the request for reconsideration, it will provide a written decision to the person seeking the removal of a person or property from the SDN List[.]").  And although Plaintiffs ostensibly ask the Court to "interpret" the regulation, they actually demand that the Court impose a temporal limitation that does not exist.  *See* Pls.' Supp. Br. 16-18.  Even more telling, Plaintiffs' argument is, at best, exceedingly untimely, as OFAC denied Plaintiffs' request for reconsideration nearly two years ago.  *See* Defs.' Unopposed Mot. at 2, ECF No. 25.

*Third*, Plaintiffs exhibit a striking ignorance for the amount of time and resources that OFAC commits to the adjudication of requests for reconsideration.  *See* Pls.' Supp. Br. at 17. Without any support, Plaintiffs cannot fathom why it could take "15 months to produce one or two substantive paragraphs . . . while redacting 90% of the remaining information."  Pls.' Supp. Br. at 17.  But in this case and many others, OFAC must carefully navigate numerous logistical and national security hurdles to ensure that it releases all unclassified information with the administrative record, while protecting the interests of this country.  When designees, such as Plaintiffs, request an unclassified version of the basis for their designations, OFAC conducts an exhaustive review of the designation evidentiary and supporting exhibits, coordinating internally and with its interagency partners.  This comprehensive process attempts to provide as much

unclassified information as possible to the designee, while ensuring that classified and otherwise sensitive information is not publicly disclosed.

*Fourth*, Plaintiffs contend that the *Loper Bright* decision has some effect on the Court's ability to consider the substantive merits of State's Section 7031(c) determination. *See* Pls.' Supp. Br. 12-15. After assessing Plaintiffs' murky claims, Defendants argued that the Court lacks jurisdiction to reach the merits of the substantive decision to designate Plaintiff Peevski under Section 7031(c), while acknowledging that the Court may assess the breadth of the statute. *See* Defs.' Mem. at 24-35. Plaintiffs, however, later made it clear that they are not challenging the *substance* of the Section 7031(c) determination—*i.e.* Plaintiff Peevski acted as a corrupt official of a foreign government—only that State exceeded its statutory authority by listing Plaintiff Peevski as a former corrupt bureaucrat. *See* Pls.' Mem. at 31-39. As previously stated, Defendants incorporate by reference their justiciability arguments to the extent Plaintiffs now challenge State's substantive decision. *See* Defs' Supp. Br. at 1, n.1; *see also* Defs.' Mem. at 24-35. But *Loper Bright* has nothing to do with the justiciability of decisions made by the Executive regarding who may or may not enter this country; the Supreme Court concluded, in the end, that the courts need not defer to an agency's interpretation of an ambiguous statutory term. Plaintiffs' meager attempt to make the *Loper Bright* decision relevant to Defendants' justiciability argument falls flat.

*Fifth*, regardless of whether Section 7031(c) is ambiguous—and Defendants make the unimpeachable observation that the provision is silent—the Court should adopt State's reasonable interpretation, as contemplated by the Supreme Court in these circumstances. *See* Pls.' Supp. Br. at 9-12. When Congress first authorized Section 7031(c), it expressly stated that the new authority was meant to further Presidential Proclamation 7750, which, in turn, explicitly suspended the entry into the United States of certain public officials or *former* public officials engaged in corruption.

Defs.' Mem. at 19-20.  Further, State has consistently notified Congress that it identifies former government officials under Section 7031(c); while Congress has updated the authority on several occasions, it has never limited the term "officials of foreign governments" to only "current" officials.  *Id.* at 20-21.  Finally, State's expertise in the area of foreign affairs informed its reasonable interpretation of the term "officials."  As previously observed, State determined that restricting the term "officials" to reach only current government actors would be incompatible with the purpose of Section 7031(c):  projecting to the world that there are consequences to engaging in corruption and combatting such corrupt activities globally.  *Id.* at 21-22.

In the context of the above argument, Plaintiffs note that another regulation defined the term "foreign official" in the Foreign Extortion Prevention Act to include both "current or former" officials.  *See* Pls.' Supp. Br. at 11-12.  Defendants struggle to understand how this unremarkable observation has anything to do with the Supreme Court's decision in *Loper Bright*, which contemplated deference to an agency's interpretation of an ambiguous statute.  *See Loper Bright Enter.*, 144 S. Ct. at 2254-73.  Putting that aside, this regulation only demonstrates that Section 7031(c) is silent on its intended reach, and State has adopted a reading consistent with other statutory schemes in the national security and foreign policy realm, and squarely within an area of State's expertise.  *Id.* at 2267 ("[A]lthough an agency's interpretation of a statute 'cannot bind a court,' it may be especially informative 'to the extent it rests on factual premises within [the agency's] expertise.'").  While Defendants acknowledge that Congress did not expressly modify "officials" with the description "current or foreign," the statute likewise does not expressly say "current" officials of foreign governments.  *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (observing "[t]hat the statute could have expressly included the phrase 'former employees' does not aid our inquiry.  Congress also could have used the phrase 'current employees.'").

In sum, the Court should adopt State's reasonable interpretation of Section 7031(c) notwithstanding the Supreme Court's decision in *Loper Bright*.

Dated:  September 20, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

BRIGHAM J. BOWEN
Assistant Director, Federal Programs Branch

*/s/ Stephen M. Elliott*
STEPHEN M. ELLIOTT (PA Bar# 203986)
Senior Trial Counsel
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L St. NW
Washington, DC 20005
Tel:  (202) 353-0889  Fax:  (202) 616-8470
E-mail:  stephen.m.elliott@usdoj.gov

*Counsel for Defendants*